I represent the petitioner Bojema Haji, a native and citizen of Morocco, who has appealed the Board of Immigration Appeals' denial of his application for political asylum, and in particular its finding that his fears of future persecution by the Moroccan government are too speculative to justify a grant of relief. Admittedly, the BIA's decision in this case, like any agency decision, is entitled to substantial deference, but this degree of deference is based upon the assumption that the Board properly exercises discretion by thoroughly considering the evidence submitted by the applicant, and in this case the BIA's decision fails to inspire any confidence that it fulfilled that responsibility. Its conclusion, for example, that there is no apparent connection between Moroccan police's visit to my client's home in April 2001, had no connection with his previous participation in a political demonstration four months earlier, gives no apparent consideration of the fact that the two of his friends from his organization who accompanied him to that rally were arrested and remained detained over two years later, even up until the date of his final hearing. Why were they arrested and why were they detained? I beg your pardon, Your Honor? Why were they arrested and why were they detained? Well, my client can only surmise that the That's the problem, isn't it? It's because your client only has a supposition. He doesn't have any evidence. Exactly, except that apparently, according to the evidence, which is presumed credible for purpose of review, it was a peaceful demonstration, and that it was, nevertheless, the police repressed it violently and arrested those participants. Under apical law in this circuit, it's presumed that actions like this have a political motivation, especially in the absence of any indication that they had, that my clients had broken any laws or had any other reason to have continued detention by the police. Yes, but there's no evidence as to whether or not the two persons who were arrested broke the law and are in custody because of the fact that they broke the law. Isn't that correct? I'm saying yes. There is, in the absence of any indication that they've broken any criminal statutes, it's presumed that the police's action, particularly in conjunction with their repression The problem is we don't know whether or not those two persons broke the law or not. Why would we presume that the police were acting illegally and that they were acting for political motives? Because there's no indication to the contrary that the participants in this worldwide day of demonstration had broken the laws. I can't say that I know anything about the demonstration that took place in Casablanca. And I don't know why, from two people that the Petitioner knew that were detained briefly by the police, why we would then presume that the police had arrested them on one of the grounds on which, one of the suspect grounds on which we might grant asylum. And why we would say, well, because they arrested two of his friends at this demonstration, ergo, he must also have been, must be in danger of being persecuted on political grounds. Well, first of all, these friends were not detained temporarily. They were in custody two and a half years later on the day of his final hearing. That's number one. Number two is, well, Matt, we're asking you to look at the cumulative impact of all the evidence in the record, not just that fact. The Board concludes, for instance, that there's no apparent indication why the police came to talk to my client. But in fact, the record establishes when they came to his house in April 2001, their intention was to take him to the station, that they then indicated an implied maneuverable intent by saying they would follow other laws if he didn't comply. But let me just stop you. It's not a situation where he wasn't living there. In other words, he, they never came back while he was there. It wasn't a situation where they posted somebody there to arrest him on the spot. They simply advised his mother, I think it was, to have him come to the station when she saw him next. Yes. Doesn't seem to me to be that much concern on the part of the police. Well, I think they said he must accompany them to the station, which indicated their intention to take him. Well, let me ask this. There's no indication, for example, from the country report that Morocco is a hotbed of repression. Who's there? Well, I disagree. There's multiple information in that report that says they monitor groups that they consider to be dissident. But as far as detention is concerned, they only have approximately 60 persons in a country of 30 million. Well, that's what Amnesty International says. But the remainder of that report verifies that they engage in arbitrary detention, that they keep people in detention up to one year on contrived criminal grounds, that there's 700 people alone in the Western Sahara that have been in their custody for advocating independence, that they utilize torture against detainees, and that they held many incommunicado. So the BIA's reference to this singular excerpt, not even from their report, from ignoring the wealth of other information, which supports the contrary conclusion that they have a poor human rights record, and particularly that they repress dissident opinion. Ultimately, my client only has to establish a possibility of future persecution. Yes, Your Honor. Well, if I – you have the – so if I understand it, you have the fact that he was detained. Is that correct? He was beaten. And beaten. My client was one of the mons who was beaten but escaped the demonstration. Okay. His two friends who accompanied with Casablanca were arrested and up to – I don't know where they are now, but at the day of his final hearing, two and a half years later, they were still in custody. And so the two friends who were with him were still in custody as of the time of the hearing? That's correct. The police or officials came to his mother's house saying they were looking for him? Well, it's his house. He wasn't home. His house where he was living and he wasn't home. Yes. And – And furthermore, the record establishes they continued to look for him up until the time of his final hearing. They had been looking for him. Returning to the house, a fact the BIA's decision doesn't acknowledge either. Okay. And you think the inference from that is compelled that there is a possibility that he will face persecution and beating again when he goes back? I think there's a – there's at the very least a reasonable possibility that he'll be detained in prison like his two friends apparently have been. And that's all he has to show. To hold him to a higher burden of proof is really contrary to the established precedent by the Supreme Court and by the circuit. Okay. And the BIA said what? BIA said, well, it's too speculative why they're looking for him. And since there are only 80 political prisoners in custody out of a country of, I think, 30 million, what are the chances more or less? But this is a sort of selective citation of the record. And it's a – the whole idea of asylum is a reasonable person standard. I certainly – Is a connection between the demonstration and their coming back to look for him? Their hostile attitude towards the demonstrators in general, their arrest of his friends, the fact that he used detention against detainees, and their hostile attitude towards his mother and continuing search for him, I think, supports a probability that they – that they learned from his friends his identity and yet are looking to arrest him. At the very least, it's got to be 10 percent. And that's all he has to show. Thank you, Your Honors. If there are no more questions, I'll stop. We'll hear from the government and you can serve your time. Thank you. Good morning, Your Honors. May it please the Court. I'm Anthony Nicasa and represent the Attorney General in this case. The issue before this Court is very narrow and it's relatively straightforward. Whether the evidence compels the conclusion, contrary to that reached by the immigration judge, that Petitioner has a well-founded fear of future persecution upon his return to Morocco, it does not. Simply put, the Petitioner's one-time participation in a nationwide demonstration as a general member of the group of justice and welfare, a group which is legal in Morocco, followed by a visit four and a half months later by Moroccan police. Where in the record does it say it's legal? I believe it's on record 125. It is legal. Why is its head? It's the group that you belong to illegal in Morocco. No, it was not. Yeah, but why is the head of that group in-house? It's been under house arrest for 10 years. It's a good question, Your Honor, but we have no evidence of that. Under the standard presented here, the compelling evidence standard, that this Court must find the evidence compels the conclusion, contrary to that reached by the agency, we don't know. We don't know a lot of things. The burden is always on the Petitioner to prove asylum, that he's worthy of a discretionary grant of asylum. But the fact that it's not illegal doesn't make, doesn't support the notion that the authorities approve of everything that they do or the things that they are espousing, does it? No, but it's one – you're right, Your Honor, but it's one additional piece of evidence, along with the other pieces of evidence in the record and the lack of certain evidence that shows that he has not shown that this – the conclusion reached is compelled to be reversed by this Court. But the fact that it hasn't been banned doesn't necessarily mean that it is supported or even its activities are not opposed. No, but it's certainly evidence that if it was banned, it certainly would count – would be more toward the line that, you know, he's participating in a banned organization in the country, and there may be a reason that they want to question. But this particular organization is legal. It's not illegal. Right. It's not illegal. As an initial matter, first of all, there's been no showing of past persecution, so the Petitioner is not entitled to the presumption of a well-founded fear. With that out of the way, Petitioner has failed. There's been no showing of past persecution. Of the Petitioner. Of the Petitioner. Right. So he's not entitled to a presumption of well-founded fear. Okay. And I think that's critical as well. First of all, the Petitioner has failed to establish a nexus between his participation in one mass demonstration which, according to his testimony, involved thousands, perhaps millions of people throughout Morocco, and he participated in the city of Casablanca. There's no evidence presented that the police sought to question concerning the demonstration itself. There was no evidence that the police sought to question about his membership in this particular organization or were even aware that he was a member. There's no evidence presented on that issue. There's no evidence that the police were generally seeking out members of this group after the demonstration. There's no evidence that the police were seeking out members of this group. We have to presume, help me again with the procedure of this, was there originally an adverse credibility finding that was? Yes, there was, Your Honor. And the board did not affirm that portion of it. That's correct. So we have to accept what he said is true. I think, according to the board, absolutely, Your Honor, because they did not affirm the credibility finding pursuant to the precedent of this circuit. Well, was he beaten? He was beaten at the day of the demonstration with a wooden rod but did not receive any hospitalization, did not seek any medical treatment, self-treated the injuries. And he got away. And is it true? He was not arrested. I mean, he says he escaped, he was not arrested. Okay. If he said he escaped, we have to accept that. And his friends were arrested and were saved. That's what he says. There's no other. We have to accept that as true. Right. But there's no evidence that anybody else was arrested. I mean, we have thousands of millions of people. He must shoulder the burden, and the evidence must compel the contrary conclusion. But he did say that he was out of work for two weeks because of the beating, didn't he? He did say he missed two weeks of work because of it, yes, Your Honor. I mean, I don't see how you're suggesting that because they didn't beat a lot of other people that, therefore, he wasn't persecuted? Or what is it that we're doing? No, Your Honor. I mean, well, the past persecution is not an issue because I don't even believe the Petitioners have contested that there was no past persecution. Well, that he wasn't singled out. But the well-founded fear of persecution, there's been no net the thing that they rest their well-founded fear of persecution on, if I understand their pleadings, is the arrest of two friends and the police visit four and a half months later. But there's been no nexus. I mean, it has to be someone looking for him, you know, have to be concerned about him to do. In other words, how did they find out who he was so they could go to his house? Is that what you're arguing? Why did the police visit him, Your Honor? And I think some of your questions earlier show that there's been no evidence presenting they could have visited him for any reason. Well, you don't have to have a police banner that says that we are looking for Mr. O'Hajijo because he participated in a demonstration, and we want to put him in jail like we have his friends. No, Your Honor, but there has to be some, some, some evidence presented that there is some link to his participation in a group which he deems political and also religious. He goes back and forth. And some fear of persecution. Now, what, I mean, there must be some link between those two. And you don't think there is any? Because otherwise, otherwise any of these thousands or million demonstrators there, and the record says that the police broke it up violently, can say, well, you know, my friend was arrested. Is there any reason, do we have, is there anything else in the, in the record that suggests why they were looking for him four and a half months later? Your Honor, I think the inquiry should be the other way around. Has the, has the Petitioner presented any evidence that what the police were there for was part, was in relation to his, on a statutory ground that is worthy of asylum? Your Honor, the Petitioner was a person. And the fact that he was, that he was beaten at the time of the demonstration and that they were looking for him later and that his friends are in prison still because of their participation in the demonstration and their membership in this organization, I don't. Well, Your Honor, there could have been evidence, for instance, as we see in many cases, that he was a leader of the organization, that he had some general responsibilities, that he participated. But I thought our law was that you had to show that he had been singled out, that they knew about him and that he had been singled out for. And that, it seems to me, if you accept his testimony, is true here, isn't it? Your Honor, I think there's more evidence as needed that must compel the conclusion in contrary. He was a general member of the organization. He admitted that he had no responsibilities and no leadership position. He admitted that nothing distinguished him from any other member of the organization. That's on Record 125. And, in fact, there's, the police don't even know he's a member of the organization. Okay? This was a nationwide demonstration on international human rights. I would, I think I would agree with you if all he said was that he was at the, at the demonstration and that friends who were at the demonstration were, were singled out and were arrested and detained and persecuted. But, and, and still there. But I guess I don't see how you can make the argument that, how that you can conclude that there is no inference warranted where he himself was detained and, and beaten and where, and where they were looking for him by name four, four months later. They just, the police, when they visited him, said, have your son come down to the station. Yeah. We don't know what for. I mean, it's four and a half months later. We have no evidence in the record to link that particular visit to the demonstration four and a half months later. I think that's critical, that there's no nexus. There's nothing to link that. If he, if he, if they had said, we're looking for him, we understand, he's friends, he knows these two. What case do we look to that is closest to this? Because I'm having a little trouble. Well, Your Honor, the recent search I did found no cases involving this particular group, nor cases involving Verlaco. No, I mean this situation where someone is beaten at a demonstration and they look for him and it's held that, that there is, that there is insufficient nexus to, to link the two episodes. I'm just wondering where the case law is, because I think there's some law on the other side that seems to suggest that, that that kind of singling out is, is sufficient. Well, Your Honor, I think that I don't, I don't have a specific. I'll stop you. It's Guber v. Gonzalez, 454, Fed Third, 1014 at 1019 through 21. And also Hoxha v. Ashcroft, 319, Fed Third, 1179 to 1182. But I think those were past persecution cases, Your Honor. Yes. Right, which, which is, which is different because we don't have a finding of past persecution. No, but in those situations, there were ones where there were beatings followed up by visits by police, and that was held not sufficient to constitute past, past persecution. Weren't they? Not sufficient to hold past persecution. In other words, those are the cases you want to cite. Right. But you're not, you're, but, but he's, I thought we weren't arguing past persecution. Right. We're not arguing past persecution. Well, I think, I think your cases are really almost, and I see my time's up, I'll stop. I'm just wondering what your, in your view, you see that as different from what case do you think? The best, the best argument I can say is that the standard of review in this case that's been announced by the Supreme Court and followed by this Court is the evidence must compel a conclusion contrary. In this particular case, there has been no evidence presented even to, to make that particular nexus on it. All right. That's it, Your Honor. Thank you very much. Very briefly, Your Honors, my client was 25 years old when these events occurred. Never apparently had any problem with Moroccan police, any contact with them, any arrests. Four months after friends get arrested. Can you testify to that? Well, there's no, they have a record clearance in terms of, and his application says he's never been arrested or anything of that effect. Four months after demonstration where two friends are arrested 10 hours from his town, they get around to coming to his house, and there's no apparent connection or at least a plausible connection to that. I strongly disagree. The standard is, is that it's well recognized in the circuit that, that applicants aren't expected to be able to provide conclusive proof of motive. It's some evidence. And you don't reward clients for telling the truth and not inventing some dialogue between the police and their parents, oh, we want him for this. It would be naive to expect that the police would reveal their political intentions in seeking him. But there has to be some evidence of the intent, doesn't there? Well, the intent is the persistence of them finding him. I also insist that they didn't just say they wanted to talk to him. They said, if he doesn't come, we're going to be following other laws. But what's the problem with the police following other laws? The implication is that following other laws is that they intend to arrest him. And if so, for what? The implication is they want to arrest for that. Ultimately... What case do you think is, what line of cases do you think are... Well, Maldonado Cruz, V.I.N.S. 883-788, which I've cited at page 11 of her opening brief. There's evidence that leftist guerrillas were looking for a certain individual. And this circuit found that in conjunction with evidence that leftist guerrillas had killed his friend, that that was sufficient to establish a well-founded fear for future persecution, that he faced the same likely fate as his friend. That's basically what we're saying. This is a reasonable person, a humanitarian form of relief. We're not trying to prove something by preponderance or beyond a reasonable doubt. We're trying to prove a possibility and suggest that this evidence doesn't support a possibility that the police intend to persecute my client, in our opinion, is wrong. Okay. Thank you. Thank you. Do you have a further question? No. Thank you. The case just argued is submitted for decision. We'll hear the next case for argument, which is United States v. Garcia-Yaramillo, which is 05-10618.
judges: Schroeder, Bybee, Wu